UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

| | | |
|---|---|---|
| AUTOMOTIVE INVESTMENT TRUST, | ) | |
| JUSTIN C. ADLER, JR. and | ) | |
| THE PATHOLOGY GROUP P.C. | ) | No. _____ |
| PROFIT SHARING PLAN U/A | ) | |
| DATED 3/1/71 f/b/o J.C. ADLER, JR., | ) | |
| PETE AVIOTTI, JR.,  ANGELA  A. MAY, Trustee | ) | |
| of the CECIL S. AVIOTTI MARITAL TRUST, | ) | JURY DEMAND |
| WILLIAM L. BOURLAND, | ) | |
| CLARK DISTRIBUTING COMPANY, INC., | ) | |
| CLARK DISTRIBUTING COMPANY, INC. | ) | |
| PROFIT SHARING TRUST UA/DTD 10/22/70, | ) | |
| KAY CLARK CREWS, Executor of the | ) | |
| Estate of SARAH A. CLARK, | ) | |
| CREDIT BUREAU OF KNOXVILLE, INC. | ) | |
| CHARITABLE REMAINDER UNITRUST, | ) | |
| JOE VAULX CROCKETT III, | ) | |
| DENIS I. FREIDEN, DENIS FREIDEN | ) | |
| DDS PROFIT SHARING PLAN, | ) | |
| RICKY H. GAINES, | ) | |
| DAVID GICKING, GARY GICKING, | ) | |
| And KELLY GICKING, | ) | |
| RAYMOND GLOTZBACH, | ) | |
| GLOTZBACH PROFIT SHARING PLAN, | ) | |
| FRED C. GOAD and DEANA R. GOAD, | ) | |
| SHIRLEY A. HENRY, | ) | |
| WALTER HEARD, | ) | |
| CHARLENE KOENEMAN, | ) | |
| GUIDO AND HOPE LANCELLOTI, | ) | |
| PETER M. LANCELLOTI, LANCELLOTI, | ) | |
| INC. PENSION PLAN, PETER | ) | |
| LANCELLOTI TRUSTEE, | ) | |
| PAUL LEADFORD LIVING TRUST, | ) | |
| HAZEL LEWIS, | ) | |
| JONATHAN MARK and AVIVA MARK, as co- | ) | |
| Owners of SENTINEL INVESTMENTS, LLC., | ) | |
| SAM and MARGARET MASSEY, | ) | |
| NATIONAL GLAUCOMA RESEARCH, A | ) | |
| PROGRAM OF AMERICAN HEALTH | ) | |
| ASSISTANCE FOUNDATION, | ) | |
| NATIONAL SOCIETY TO PREVENT | ) | |
| BLINDESS, dba PREVENT BLINDNESS | ) | |

1

AMERICA,                                            )
KENNETH I. PROCTOR,                                 )
LINDA M. RICHMOND,                                  )
NANCY LOYD RIEVES,                                  )
G.A. ROBINSON, III,                                 )
HARRY G. ROTHWELL, JR. and                          )
LIND W. ROTHWELL,                                   )
RICHARD C. SWEEBE,  BOBBI                           )
JO SWEEBE, BROOKS REALTY                            )
PARTNERS, LP, MID-AMERICA                           )
INTERNATIONAL TRUCKS, INC.,                         )
DIAMOND COMPANIES, INC.,                            )
ELLEN VAN BUREN,                                    )
FRANK AND SYLVIA WOODHOUSE,                         )
LEE and BEVERLY WIRTH,                              )
JEFFREY R. WRIGHT and                               )
ALICE D. WRIGHT,                                    )
FREDERICK A. ZYDECK, and                            )
ELIZABETH H. ZYDECK,                                )
                                                    )
          Plaintiffs,                               )
                                                    )
v.                                                  )
                                                    )
MORGAN ASSET MANAGEMENT,                            )
INC., JAMES C. KELSOE, JR.,                         )
DAVID H. TANNEHILL,                                 )
CARTER E. ANTHONY,                                  )
ALLEN B. MORGAN, JR.,                               )
JOSEPH C. WELLER,                                   )
JAMES STILLMAN R. MCFADDEN,                         )
ARCHIE W. WILLIS, III,                              )
MARY S. STONE,                                      )
W. RANDALL PITTMAN,                                 )
J. KENNETH ALDERMAN,                                )
J. THOMPSON WELLER,                                 )
CHARLES D. MAXWELL,                                 )
WILLIAM JEFFRIES MANN,                              )
JAMES D. WITHERINGTON,                              )
R. PATRICK KRUCZEK,                                 )
JACK R. BLAIR,                                      )
ALBERT C. JOHNSON,                                  )
MICHELE F. WOOD,                                    )
BRIAN B. SULLIVAN,                                  )
                                                    )
          Defendants.                               )

2

---

### COMPLAINT

---

### PRELIMINARY STATEMENT

1.      Each of the plaintiffs in this action lost money in investments made in one or more of the following income funds operated, managed, directed, underwritten, and/or sold by defendants: the Regions Morgan Keegan Select High Income Fund, the Regions Morgan Keegan Select Intermediate Bond Fund, and the RMK Multi-Sector High Income Fund (collectively, the "Funds").  Defendants engaged in unlawful and deceptive conduct in connection with these Funds.

### I.  PARTIES

2.      Plaintiff Automotive Investment Trust has its principal place of business in this judicial district.

3.      Plaintiffs Justin C. Adler, Jr. and The Pathology Group P.C. Profit Sharing Plan U/A Dated 3/1/71 f/b/o J. C. Adler, Jr. reside and have their principal place of business in this judicial district.

4.      Plaintiffs Pete Aviotti, Jr. and Angela A. May, Trustee of the Cecil S. Aviotti Marital Trust reside and have their principal place of business in this judicial district.

5.      Plaintiff William L. Bourland is a resident of this judicial district.

6.      Plaintiffs Clark Distributing Company, Inc., Clark Distributing Company, Inc. Profit Sharing Trust UA/DTD 10/22/70 and Kay Clark Crews, Executor of the Estate of Sarah A. Clark reside and have their principal place of business in this judicial district.

7.      Plaintiff Credit Bureau of Knoxville, Inc. Charitable Remainder Unitrust has its principal place of business in Tennessee.

8.      Plaintiff Joe Vaulx Crockett III is  a resident of Tennessee.

9.      Plaintiffs Denis I. Freiden and Denis Freiden DDS Profit Sharing Plan reside and have their principal place of business in this judicial district.

10.      Plaintiff  Ricky H.. Gaines is a resident of Arkansas.

11.      Plaintiffs David Gicking, Gary Gicking and Kelly Gicking are residents of this judicial district..

12.      Plaintiffs Raymond Glotzbach and Glotzbach Profit Sharing Plan reside and have their principal place of business in this judicial district.

13.      Plaintiffs Fred C. Goad and Deana R. Goad are residents of Tennessee.

14.      Plaintiff Shirley A. Henry is a resident of Tennessee.

15.      Plaintiff Walter Heard is a resident of Mississippi.

16.      Plaintiff Charlene Koeneman is a resident of this judicial district.

17.      Plaintiffs Guido and Hope Lancelloti, Peter M. Lancelloti and Lancelloti, Inc. M/Plaintiff Pension Plan, Peter Lancelloti Trustee reside and have their principal place of business in Tennessee.

18.      Plaintiff Paul Leadford Living Trust has its principal place of business in this judicial district.

19.      Plaintiff Hazel Lewis is a resident of this judicial district.

20.     Plaintiffs Jonathan Mark and Aviva Mark, as co-Owners of Sentinel Investments, LLC reside and have their principal place of business in Massachusetts.

21.     Plaintiffs Sam and Margaret Massey are residents of this judicial district.

22.     Plaintiff National Glaucoma Research, a Program of American Health Assistance Foundation has its principal place of business in Maryland.

23.     Plaintiff National Society to Prevent Blindness, dba Prevent Blindness America has its principal place of business in Illinois.

24.     Plaintiff Kenneth I. Proctor is a resident of Tennessee.

24.     Plaintiff Nancy Loyd Rieves is a resident of Mississippi.

25.     Plaintiff Linda M. Richmond is a resident of Tennessee.

26.     Plaintiff G.A. Robinson is a resident of this judicial district.

27.     Plaintiff Harry G. Rothwell, Jr. and Lind W. Rothwell are residents of Florida.

28.     Plaintiffs Richard C. Sweebe, Bobbi Jo Sweebe, Brooks Realty Partners, LP, Mid-America International Trucks, Inc. and Diamond Companies, Inc. reside and have their principal place of business in this judicial district.

29.     Plaintiff Ellen Van Buren is a resident of Tennessee.

30.     Plaintiffs Frank and Sylvia Woodhouse are residents of Florida.

31.     Plaintiffs Lee and Beverly Wirth are residents of Virginia.

32.     Plaintiffs Jeffrey R. Wright and Alice D. Wright are residents of this judicial district.

33.     Plaintiffs Frederick A. Zydeck and Elizabeth H. Zydeck are residents of Michigan.

34.     Defendant Morgan Asset Management, Inc. ("MAM"), is a registered investment adviser that managed and advised the Funds at all times relevant herein.  MAM is headquartered in Birmingham, Alabama, with a principal office in Memphis, Tennessee.  MAM charged the Funds management fees based on the average daily net assets of the Funds.

35.     Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan") is a full service broker/dealer that purports to provide personalized investment services to its clients from over 400 offices in 19 states, and is headquartered in Memphis, Tennessee.  Morgan Keegan has, and at all times material to this case, had offices in and did business in Davidson County, Tennessee.  Morgan Keegan acted as underwriter and/or distribution agent with respect to the Funds' shares sold during the time period relevant to plaintiffs' claims. Morgan Keegan sold and received commissions on the sale of shares of the Funds. Morgan Keegan also provided an employee to serve as the Funds' Chief Compliance Officer and, pursuant to a Fund Accounting Service Agreement, provided portfolio accounting services to the Funds for an annual fee based on the average daily net assets of the Funds.  Morgan Keegan also served as the Transfer and Dividend Disbursing Agent for the Funds.  Pursuant to the Transfer Agency and Service Agreement, each Fund pays Morgan Keegan an annual base fee per share class.

36.     Defendant Allen B. Morgan, Jr. ("Morgan"), was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  During the time period relevant to plaintiffs' claims, he also served as a Director of MAM, and Chairman and Executive Managing Director of Morgan Keegan.  Defendant Morgan signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective

during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

37.     Defendant Carter E. Anthony ("Anthony") was, during times relevant to plaintiffs' claims, a director and officer of one or more of the Funds.  Additionally, Anthony was President and Chief Investment Officer of MAM.  Mr. Anthony signed one or more of the registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to this case and/or with respect to which plaintiffs can trace their purchases in the Funds.

38.     Defendant Joseph C. Weller ("Weller") co-founded Morgan Keegan. Weller was Vice Chairman of Morgan Keegan and Treasurer of the Funds until November 2006.  Weller also served as Chief Financial Officer ("CFO") of Morgan Keegan and was during the time period relevant to plaintiffs' claims an officer of one or more of the Funds. Defendant Joseph Weller signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

39.     Defendant James Stillman R. McFadden ("McFadden") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  Defendant McFadden signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

40.     Defendant Archie W. Willis, III ("Willis") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  Defendant Willis

signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

41.     Defendant Mary S. Stone ("Stone") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  Defendant Stone signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

42.     Defendant W. Randall Pittman ("Pittman") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.   Defendant Pittman signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

43.     Defendant J. Kenneth Alderman ("Alderman") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  Mr. Alderman has been CEO of MAM since 2002.  Defendant Alderman signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

44.     Defendant J. Thompson Weller ("JT Weller") is, and at all relevant times was, Managing Director and Controller of Morgan Keegan.  Defendant JT Weller signed one or more of the Funds' registration statements, prospectuses, and/or amendments

thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

45.      Defendant Brian B. Sullivan ("Sullivan") has served as President and Chief Investment Officer of MAM since 2006.

46.      Defendant Charles D. Maxwell ("Maxwell") has served as Executive Managing Director, CFO, Treasurer and Secretary of Morgan Keegan since 2006. Defendant Maxwell signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

47.      Defendant James C. Kelsoe, Jr. ("Kelsoe") is, and at all relevant times Senior Portfolio Manger of the Funds and of MAM.

48.      Defendant David H. Tannehill ("Tannehill") is and was during the time period relevant to plaintiffs' claims the Portfolio Manager of the Funds and of MAM.

49.      Defendant Michele F. Wood ("Wood") is, and at all relevant times was, Chief Compliance Officer and Senior Vice President of MAM.

50.      Defendant Jack R. Blair ("Blair") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.   Defendant Blair signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

51.      Defendant Albert C. Johnson ("Johnson") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.   Defendant Johnson

signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

52.     Defendant William Jeffries Mann ("Mann") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  Defendant Mann signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

53.     Defendant James D. Witherington, Jr. ("Witherington") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  Defendant Witherington signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

54.     Defendant R. Patrick Kruczek ("Kruczek") was during the time period relevant to plaintiffs' claims a director of one or more of the Funds.  Defendant Kruczek signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the time period relevant to plaintiffs' claims and/or with respect to which plaintiffs can trace their purchases in the Funds.

55.     The defendants referred to in ¶¶ 36-54 above are referred to herein as the "Individual Defendants."

56.     Defendants either participated, directly or indirectly, in the wrongful conduct alleged herein; combined to engage in the wrongful transactions and dealings alleged herein; knew, or in the exercise of reasonable care, should have known, of the

misrepresentations and omissions of material facts, or recklessly caused such misrepresentations or omissions of material facts to be made; or benefited from the wrongful conduct alleged.

## II.  JURISDICTION AND VENUE

57.     This Court has subject matter jurisdiction over plaintiffs' Securities Act claims pursuant to 15 U.S.C. § 77*v* and 28 U.S.C. § 1331.

58.     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this judicial district.

## III.  FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

### The Funds' Catastrophic Crash

59.     During all times relevant to this case, the Funds were operated, managed, directed, underwritten, and/or sold by the defendants.

60.     During 2007-2008, the Funds experienced a meltdown of unprecedented proportions, suffering losses of 90% or more of their values.

61.     These tremendous losses were not caused primarily by an economic downturn, the subprime crisis, or other general market forces.  This assertion is easily confirmed by the performance of the investment indices by which the Funds measured themselves and by the performance of other funds in the high income bond category.  For example, for the year 2007, the Lehman Brothers U.S. High Yield Index, the benchmark by which the Funds measured themselves, gained 1.87% while the Funds lost close to 60% of their value.

62.     Similarly, the performance of other high income and intermediate bond funds in 2007 and 2008 was dramatically different from the catastrophic performance of the Funds at issue in this case.  The Funds were by far the worst performing funds in their categories.   And in 2009, most high yield bond funds have experienced a significant rebound, while those RMK Funds have not (the RMK Select High and Select Intermediate Funds were actually closed in May 2009).

63.     In July of 2008, the management of the Funds was taken away from MAM and turned over to an investment advisor called Hyperion Brookfield.  This new firm attempted to chart a new course for the Funds and to move its holdings out of structured securities.  The Select High and Select Income Funds were unsalvageable and were closed in May 2009.  The four closed end funds continue to trade at less than 10% of their offering prices and have no prospects for a significant recovery.

64.     The astonishing meltdown of the Funds was caused primarily by their by their extreme overconcentration in the riskiest tranches of structured, asset-backed securities – an investment strategy and risk not properly disclosed to potential investors, by the Funds' failure to value their assets at reasonable fair value, and by the failure of the Funds to disclose properly all material risks and the true facts.

65.     Although subprime and credit concerns in 2007 had some effect on the Funds, the magnitude of the Funds' losses was completely outside the range of the losses, if any, experienced by other high income and intermediate income funds to which the Funds compared themselves.

66.     The disproportionate, adverse effect of economic events on the Funds could not reasonably have been foreseen or anticipated by persons investing in the Funds,

in view of the Funds' misleading and incomplete disclosures. The disproportionate effect of economic events on the Funds, however, could and should reasonably have been foreseen and anticipated by defendants, given the Funds' high concentration in a narrow sector of securities that were likely to plummet in unison in the event of a credit crunch or real estate downturn.

67.     The majority of the Funds' collapse occurred during and after a period of time in which defendants' made the following disclosures concerning problems with the Funds:

- At a shareholders meeting on July 13, 2007, defendant Kelsoe disclosed that the Funds' subprime and collateralized debt holdings were under pressure and experiencing substantial volatility.

  - On August 10, 2007, defendant Kelsoe disclosed in an open letter the Funds' increasing volatility, negative price movement in the Funds' assets, and "unprecedented" problems.

- In mid-August, 2007, the Funds made several SEC filings disclosing asset illiquidity and difficulties in obtaining realistic values for some of the Funds' securities. These SEC filings also stated that the Funds were unable to file certified shareholder reports on a timely basis and had retained a valuation consultant to assist in determining the fair value of the Funds' securities.

  - On October 4, 2007, Regions Morgan Keegan Select Funds, Inc., filed its annual report with the SEC. The following day, the Wall Street Journal reported that the Regions Morgan Keegan Select High Income and Intermediate Funds had had to value 60% and 50% of their assets, respectively, at fair value since market values were not readily available. In connection with that article, defendant Kelsoe told the Journal that "What was an ocean of liquidity has quickly become a desert."

- On November 7, 2007, defendant Kelsoe published a letter in which he stated that "we have always invested a large portion of our portfolios in "structured finance" fixed income securities . . . . and the weakness in the portfolios relates to this area of investment."

- On March 6, 2008, Regions Morgan Keegan Select High Income and Intermediate Funds disclosed for the first time in an SEC filing that the Funds losses were caused primarily because of the leveraged risk in the Funds' structured securities.

68.    Thus, the extraordinary decline in the Funds' asset values and share prices during 2007-2008 was caused by actions and omissions of the defendants and their failure to make timely and accurate disclosures to the investing public.

**Misrepresentations And Omissions In The Funds' SEC Filings**

69.    The Securities and Exchange Commission ("SEC") promulgates, through its Forms N-1A and N-2, directives that open-end and closed-end management companies, respectively, must follow in the prospectuses they file with the SEC. [1] Form N-1 states that prospectuses filed by open-end management companies must:

- "clearly disclose the **fundamental characteristics** and **investment risks** of the Fund, using concise, straightforward, and easy to understand language" (emphasis supplied)

- "identify the Funds' **principal investment strategies (including the type or types of securities in which the Fund invests or will invest principally**)" (emphasis supplied)

- "summarize the **principle risks** of investing in the Fund." (emphasis supplied)

- not "disproportionately emphasize investments or activities of the Fund that are not a significant part of the Funds' investment operations"

- "be designed to assist an investor in comparing and contrasting the Fund with other funds"

70.    Similarly, Form N-2 states that prospectuses filed by closed- end management companies must:

- use "clear, concise, and understandable" language and include "only information

---

[1]   Regions Morgan Keegan Select High Income Fund, Inc., which owned and operated the Regions Morgan Keegan Select High Income Fund and the Regions Morgan Keegan Select Intermediate Bond Fund, is an open-end management company.   The RMK Multi-Sector High Income Fund were owned and operated by closed-end management companies.

needed to understand the **fundamental characteristics**" of the fund (emphasis supplied)

• "concisely describe the **investment objectives and policies of the Registrant that will constitute its principal portfolio emphasis**, including . . . the **types of securities in which the registrant will invest principally**" and must "briefly describe the **significant investment practices**" the fund intends to employ (emphasis supplied)

• "concisely describe the risks associated with an investment in the Registrant" and "discuss the **principal risk factors**" (emphasis supplied)

71.     At all times relevant to this case, the principal, fundamental strategy of the Funds was an unusual concentration in structured, asset- backed securities, particularly the lowest, riskiest tranches of such structured securities.  The Select High Income and Select Intermediate Bond Funds utilized this strategy from the outset. And when the four, closed-end RMK Funds were offered in 2003, 2004, and 2006, Morgan Keegan, MAM and their affiliates and officers and directors understood that these funds would simply continue the existing strategy.

72.     Concomitantly, the principal risk posed by an investment in the Funds was the usual risk associated with the lower tranches of structured securities. The income flow produced by the pool of assets backing a structured investment typically flows to the tranches in order of priority from top to bottom.  For example, an eighth tier tranche receives income only if all other tranches are fully paid.  Thus, the lower tranches, which earn more interest if things go well, have highly leveraged risks that, in bad times, may result in complete losses.

73.     In violation of SEC rules, the prospectuses and registration statements filed by the Funds failed to disclose either their principal investment strategy or the unusual, leveraged risk associated with that strategy – facts that were highly material.

The Funds' SEC filings misleadingly numbed investors with an extensive laundry list of possible investments and risks, but gave them no fair notice of what the Funds actually were doing and intended to do.

74.       No other intermediate term or high-yield bond fund invested as heavily in structured financial instruments as did the Funds in this case. On July 19, 2007, Bloomberg News quoted defendant James Kelsoe, senior portfolio manager of the Funds, as having an "intoxication" with such securities. Bloomberg further reported that an analyst at Morningstar, Inc., the mutual fund research firm, noted that "[a] lot of mutual funds didn't own much of this stuff" and that Kelsoe was "the one real big exception."

75.       But the Funds' SEC filings never gave investors the requisite information to assist them "in comparing and contrasting the Fund with other funds," as the SEC requires. To the contrary, the Funds misled investors about the true nature of the Funds by comparing themselves, in SEC filings, to a bond fund benchmark that did not include any component of structured securities.

76.   In other litigation, defendants have noted that the Statement of Additional Information filed by one of the Funds included a discussion of the fact that the Funds "may" invest in "subordinated classes of senior- subordinated securities" that "are subordinated in some manner" as to payments.  This disclosure clearly failed to satisfy the Funds' legal obligations.  This vague, uncertain language did not fairly explain the nature and risks of the tranched investments, nor was there any explanation that this type of investment was in fact the principal strategy and concentration of the Funds. Moreover, the SEC requires that <u>principal</u> strategies and risks must be disclosed in the prospectus. Disclosure of principal strategies and risks only in a Statement of Additional Information,

which is not routinely provided to investors, is not permissible, nor is it fair to investors.

77.    It was not until an SEC filing in early March of 2008 that the Funds first made any meaningful disclosure of their principal risk – a risk that by that time had destroyed the Funds. In a semi-annual report filed by the Select Funds, management's discussion of the brutal losses sustained by the Funds included a brief statement that "the structured finance category has taken the hardest hit so far due to the implicit (*i.e.*, built into the structures) and explicit (*i.e.*, financed, or bought on margin) leverage employed for this asset category. . . ."[2]

78.    But the Funds prospectuses and registration statements had never disclosed or explained the leveraged risk created by the Funds' concentration in structured, asset-backed securities. To the contrary, the Select Funds' prospectuses stated that they could not employ margin leverage, and the four RMK Fund prospectuses stated that leverage would be limited to margin debt equal to no more than one-third of the Funds' total asset value.  These statements significantly misled investors about the principal risk in the Funds – the implicit leverage in the lower tranches of structured securities, which was dramatically higher than one-third of the total investment in these securities.

79.    Thus, as set forth in the preceding paragraphs, each of the prospectuses and registration statements pursuant to which the Funds were sold to the public during the time period relevant to this case contained material misrepresentations and/or failed to disclose material facts concerning the Funds' principal investment strategy and risk. In addition, the Funds' prospectuses and registration statements also failed to disclose a number of other material facts, including the following:

---

[2] This statement was presumably confused in its reference to margin debt, which the Select Funds were not allowed to use.

(a) The structured investments in which the Funds were concentrating their investments were not actively traded and were less liquid that many other types of securities;

(b)   The substantial illiquidity of the Funds meant that in the event of a forced sale assets would quite likely bring far less than the prices at which they were valued by the Funds;

(c)   The substantial illiquidity of the Funds also meant that if it became necessary for the Funds to sell assets, either because of shareholder liquidations or margin calls, the manager would likely have to sell first the few lower-risk, liquid assets held by the Funds, thus penalizing those who remained in the Funds;

(d)   The Funds were all pursuing the same investment strategy and investing in the same or similar securities.   This greatly exacerbated the difficulty of selling assets at reasonable prices in the event of a forced liquidation; and

(e)   Investors in the Funds were not told that in the event that one of the Funds were forced (because of redemptions or margin calls) to sell assets at prices below value at which they were carried by that Fund, then the other Funds would have to mark down the value of the same of similar assets they held.

80.    In addition, the Funds were presented to the investing public as different funds that employed different investment strategies. In truth, however, they were managed almost identically, with highly similar asset allocations and individual securities holdings. This reality was not disclosed in the registration statements and prospectuses filed by the Funds.

81.    Because of their highly correlated portfolios, investors who purchased more

than one of the Funds assumed they were thereby diversifying and reducing overall risk, were in fact not doing so. This fact was not disclosed in the registration statements and prospectuses filed by the Funds.

82.   Also, the registration statements and prospectuses filed by the Funds represented that they would invest in a wide range of securities, which would contribute to a more stable net asset value, would not invest more than 25% of its total assets in the securities of companies in the same industry, and would pursue a value investing strategy. These statements were misleading in view of the fact that the Funds were concentrated and intended to concentrate far beyond 25% in securities that in the event of a liquidity crunch would collapse as a single sector because they were purchased primarily by financial industry firms that relied on credit.

83.   In addition, the prospectuses and registration statements filed with respect to the Morgan Keegan Select High Income and Intermediate Funds stated that these Funds would not invest more than 15% of their assets in illiquid securities. In 2006 and 2007, these Funds substantially violated this investment restriction. This fact was not disclosed in the Funds' prospectuses.

84.   Furthermore, during significant portions of 2007 and 2008, the Funds were paying dividends to investors that included an undisclosed return of principal.  The Funds never advised shareholders that they were receiving their own money back.   The fraudulently inflated dividends misled investors into believing that the Funds were doing reasonably well and therefore induced investors, including plaintiffs, to hold onto their investments.

85.   In addition, the annual and semi-annual reports filed by the Funds during 2006-

2007 contained inflated valuations of the Funds' securities and mischaracterized certain holdings in structured securities as other types of assets.

### Plaintiffs' Investments In The Funds

86.     During the period December 6, 2004 though 2008, all plaintiffs invested in one or more of the Funds.

87.     Altogether, plaintiffs lost millions of dollars on their investments in the Funds during this period of time.

### IV.  LEGAL CLAIMS

### COUNT ONE – VIOLATION OF SECTION 11 OF SECURITIES ACT

88.     Plaintiffs incorporate ¶¶ 1-87 by reference.

89.     This Count is brought by plaintiffs pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, against all defendants.

90.     The registration statements by which the Funds  were offered to plaintiffs, or to those investors from whom plaintiffs acquired their shares, were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

91.     The defendants were persons who signed the Funds' registration statements, were directors or persons or entities performing similar functions for the issuers, or underwriters of the Funds.

92.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds to believe that the statements contained in the Funds'

registration statements were true and without omissions of material facts and not misleading. Defendants could have, with the exercise of reasonable care, become aware of the misleading nature of the registration statements.

93.     Through the conduct alleged above, each defendant violated, is liable under, or controlled a party who is liable under §11 of the Securities Act.

94.     Plaintiffs acquired shares of the Funds during the period in which defendants' misleading registration statements were in effect. The shares purchased by plaintiffs were bought pursuant to defendants' registration statements or are traceable to such registration statements.

95.     Plaintiffs have been damaged and are entitled to all relief from defendants permitted by § 11 of the Securities Act.

96.     At the times plaintiffs purchased their shares in the Funds, they did not know and could not reasonably have known of the misleading statements, omissions, and misconduct set forth above.

## COUNT TWO – VIOLATION OF SECTION 12 OF SECURITIES ACT

97.     Plaintiffs incorporate ¶¶ 1- 96 by reference.

98.     This Count is brought by plaintiffs pursuant to § 12a(2) of the Securities Act, 15 U.S.C. § 77*l*, against all defendants.

99.     Defendants were sellers, offerors, and/or solicitors with respect to the investments in the Funds made by plaintiffs.

100.    The Individual Defendants participated in the preparation of the prospectuses filed with respect to the Funds.

101.    The prospectuses by which the Funds were offered to plaintiffs and others were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

102.    Defendants could have, with the exercise of reasonable care, become aware of the misleading nature of the Funds' prospectuses.

103.    Through the conduct alleged above, defendants violated, are liable under, or controlled a party who is liable under §12a(2) of the Securities Act.

104.    For the same reasons, the fund companies that issued and sold shares in the Funds,[3] violated §12a(2) of the Securities Act.  These companies are not defendants herein, however, and plaintiffs seek no relief against them.

105.    Plaintiffs acquired shares of the Funds from the issuers during the time when defendants' misleading prospectuses were in effect.

106.    Plaintiffs have been damaged and are entitled to all relief from defendants permitted by § 12a(2) of the Securities Act.

### <u>COUNT THREE – VIOLATION OF SECTION 15 OF SECURITIES ACT</u>

107.    Plaintiffs incorporate ¶¶ 1- 106 by reference.

108.    This Count is brought by plaintiffs pursuant to § 15 of the Securities Act, 15 U.S.C. § 77*o*, against all defendants.

109.    Defendants were control persons of the Funds and/or Fund companies by virtue of  their positions as directors or senior officers of the Funds and/or by virtue of their relationships with the Funds.  These defendants exercised control over the general affairs

---

[3] RMK Multi-Sector High Income Fund, Inc., and Morgan Keegan Select Fund, Inc.,

of the Funds and/or Fund company and had the power to control the conduct giving rise to plaintiffs' claims.

110.   Defendants are therefore liable for the Securities Act violations alleged in Counts One and Two above.

THEREFORE, plaintiffs respectfully request that the Court:

1.   Grant judgment in favor of plaintiffs and against defendants, jointly and severally, for rescissionary damages or other appropriate compensatory damages, including prejudgment interest.

2.   Order the disgorgement by defendants of all fees earned with respect to the investments improperly sold to plaintiffs.

3.   Award to plaintiffs reasonable attorney's fees.

4.   Afford plaintiffs a trial by jury.

5.   Provide such further legal or equitable relief as the Court deems to be just.

Respectfully submitted,

*/s/ H. Naill Falls Jr.*
H. Naill Falls Jr., TN BPR #6787
John B. Veach III, TN BPR #8994
FALLS  & VEACH
1143 Sewanee Rd.
Nashville, TN 37220
615/242-1800

*/s/ Scott T. Beall*

Scott T. Beall
6800 Poplar Avenue
Atrium I, Suite 215
Memphis, TN  38138
901/681-0500